## In the Matter of Establishment Inspection of MIDWEST INSTRUMENTS COMPANY.

### Appeal of Elizabeth H. DOLE, United States Secretary of Labor.

### No. 89–2819.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 22, 1990.

Decided April 27, 1990.

---

John Shortall, Appellate Litigation, Ann Rosenthal, Dept. of Labor, Office of the Sol., Washington, D.C., for appellant.

R. Joel Falk, Hartland, Wis., for appellee.

Before CUDAHY and COFFEY, Circuit Judges, and SHARP, District Judge.[*]

CUDAHY, Circuit Judge.

After receiving a formal employee complaint about allegedly unsafe working conditions at a plant owned and operated by Midwest Instruments Company and being refused permission to search the plant, the Secretary of Labor applied for an inspection warrant. The application was denied by a magistrate on the grounds that it failed to support a reasonable inference that the alleged working conditions had caused the wrist and neck injuries described in the complaint. The magistrate also found that the employee complaint failed to provide the "reasonable particularity" required of employee complaints under the Occupational Safety and Health Act. The district court denied the Secretary's petition for review and affirmed the magistrate's decision. We reverse.

[*] The Honorable Allen Sharp, Chief Judge of the United States District Court for the Northern District of Indiana, is sitting by designation.

## I. Facts

On January 23, 1989, the Occupational Safety and Health Administration ("OSHA" or the "Secretary")[1] received a written complaint from an employee at the Hartland, Wisconsin plant of Midwest Instruments Company ("Midwest").[2] The complaint stated that:

> Employees who work on the assembly lines, including the stream and sucker line and the thermocouple tip line, some are experiencing neck and wrist injuries. Employees in the above areas are required to manually assemble two steel pieces into a clip. The two steel pieces don't fit properly and thus requires the use of force with the hands to make the pieces fit into the clip. Six of the approximately 19 employees assigned to the assembly lines have required surgery to treat similar repetitive motion related wrist and neck injuries over the past 3 years. Employees have requested that the metal working die used to produce the two steel pieces be improved. This would make the two steel pieces of the correct size so that excessive force would not be required. The company has refused to implement the change. There are approximately 40 employees employed at the workplace.

Appellant's Appendix at A.14.

A few weeks after receiving this complaint, an authorized OSHA compliance officer attempted to search Midwest's Hartland plant, but was refused permission to enter. The compliance officer then applied to a U.S. magistrate for a warrant to undertake the search. The application quoted the employee complaint in its entirety, stated that OSHA had determined that there were reasonable grounds to believe that conditions at Midwest's plant violated the OSH Act and defined the scope of OSHA's proposed search.[3]

In response to the magistrate's request for more specific information, the Secretary submitted a statement of position which set forth additional legal and factual support. This statement of position cited authority which showed how the trauma associated with the repetitive forcing of the wrists could constitute a serious violation of section 5(a)(1) of OSHA, which guarantees employees a workplace free of hazards likely to cause serious physical harm.

The magistrate denied the Secretary's request for a warrant because he found that the application did not contain sufficient allegations from which a causal connection between the alleged neck and wrist injuries and the working conditions at Midwest's plant could reasonably be inferred. The magistrate believed that this was especially true of the claims relating to employee neck injuries because he thought that any causal connection between wrist movements and neck injuries was especially tenuous. The magistrate also found that the complaint submitted by the employee failed to satisfy the "reasonable particularity" required of an employee complaint under section 8(f)(1) of the OSH Act.

The Secretary filed objections to the magistrate's decision with the district court. The district court denied the Secretary's petition for review and affirmed the magistrate's findings. The district court essentially agreed with the magistrate's conclusion that the facts set forth in the Secretary's warrant application were too conclusory.

The district court, like the magistrate below, also found that the facts asserted in the application did not support a reasonable inference that the six injuries alleged in the employee complaint were related to the repeated motion of forcing two steel pieces together with pressure from the wrists.

---

**1.** The Secretary of Labor has delegated her responsibilities under the Occupational Safety and Health Act to her Assistant Secretary for Occupational Safety and Health. In this opinion, the terms "OSHA" and "Secretary" are used interchangeably. In addition, the Occupational Safety and Health Act will be abbreviated as "the OSH Act."

**2.** The complaint was made pursuant to section 8(f)(1) of the Occupational Safety and Health Act, 29 U.S.C. § 657(f)(1), which gives OSHA the authority to act upon employee complaints of this kind.

**3.** The application is set forth at Appellant's Appendix at A.8–A.12.

Both the district court and the magistrate thought it especially significant that the injured employees apparently lacked the medical expertise to make scientific or causative judgments about their injuries. Finally, the district court recommended that the Secretary undertake the "burden of investigating employee complaints prior to applying for an inspection warrant." The Secretary appeals. We reverse.

## II. Analysis

The OSH Act allows an inspection to be made pursuant to an employee complaint. 29 U.S.C. § 657(f). Although no search warrant is specifically required under the OSH Act, the Supreme Court has held that a search warrant or its equivalent is constitutionally necessary for non-consensual workplace inspections. *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978). *See also Donovan v. Federal Clearing Die Casting Co.,* 655 F.2d 793, 796 (7th Cir.1981).

■ Thus, nonconsensual administrative searches of private businesses must comply with the probable cause requirement of the Fourth Amendment. *Michigan v. Tyler,* 436 U.S. 499, 506, 98 S.Ct. 1942, 1948, 56 L.Ed.2d 486 (1978); *Marshall v. Barlow's, Inc.,* 436 U.S. at 324, 98 S.Ct. at 1826; *Camara v. Municipal Court,* 387 U.S. 523, 528–529, 87 S.Ct. 1727, 1730–1731, 18 L.Ed.2d 930 (1967). "Probable cause" in the usual, criminal sense is not required of administrative warrants, however. *Marshall v. Barlow's, Inc.,* 436 U.S. at 320, 98 S.Ct. at 1824; *Burkart Randall Div. of Textron, Inc.,* 625 F.2d 1313, 1317 (7th Cir.1980); *In the Matter of: Establishment Inspection of: Gilbert & Bennett Mfg. Co.,* 589 F.2d 1335, 1338– 1339 (7th Cir.1979). Rather, "probable cause" will be found to support an OSHA warrant if the warrant application supports a *reasonable belief* or leads to a *reasonable suspicion* that the OSH Act or its regulations have been violated.

■ Thus, the primary issue raised by this case is whether the facts, and other information, set forth in the Secretary's warrant application establish the requisite probable cause. This court has held that, in the normal Fourth Amendment context, review of a district court's determination of probable cause is to be made *de novo. United States v. Jaramillo,* 891 F.2d 620, 626 (7th Cir.1989); *United States v. Price,* 888 F.2d 1206, 1208 (7th Cir.1989); *United States v. Patino,* 862 F.2d 128, 132 (7th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 2072, 104 L.Ed.2d 637 (1989). There is no reason why the same standard should not be applied to reviewing probable cause determinations in the administrative context as well.[4]

■ An OSHA warrant "application must at least inform the Magistrate of the substance of the employee complaints, so that the Magistrate may exercise independent judgment as to whether an inspection is justified ..." *Burkart Randall,* 625 F.2d at 1319. We think that the Secretary's warrant application did just this, and more.

■ The application set forth the employee complaint in its entirety. This complaint described the employees who were being injured, where they were being injured, the type of injuries, the number of injuries and the believed cause of these injuries. We think that this information was sufficient, in and of itself, to support a reasonable belief that OSHA was implicated and that an inspection was warranted. We must be ever mindful that the goal of OSHA is preventive, not remedial. *See, for example, Kent Nowlin Const. Co. v. Occupational Safety & Health Review Commission,* 593 F.2d 368, 371–372 (10th Cir. 1979). The reasonableness required of an OSHA warrant should thus be interpreted with this policy in mind and with a careful eye toward not requiring so much of an OSHA warrant application that the Fourth

**4.** In *United States v. Jaramillo,* 891 F.2d 620, 626 (7th Cir.1989), we noted that a district court's assessment of reasonable suspicion for purposes of establishing the legitimacy of a *Terry* stop is

also reviewed *de novo.* Since much the same standard is used to assess probable cause here, *de novo* review is appropriate in this context as well.

Amendment becomes an obstacle to common sense.

In addition, the Secretary's supplemental statement of position provided detailed information about the probable nature of the employees' injuries and how these injuries implicated OSHA. We thus reject the district court's determination that the Secretary's warrant application was too conclusory. In this case, the Secretary provided the magistrate with much more than a mere statement that an employee complaint had been received. Cf. *Weyerhaeuser Co. v. Marshall*, 592 F.2d 373 (7th Cir.1979); *In the Matter of: Establishment Inspection of: Northwest Airlines, Inc.*, 587 F.2d 12 (7th Cir.1978). We also find that the application provided the particularity required by Section 8(f)(1) of the OSH Act.

For similar reasons, we disagree with the district court's determination that the application failed to set forth sufficient facts from which a nexus between the alleged wrist and neck injuries and Midwest's stream and sucker, and thermocouple tip assembly lines could reasonably be inferred. The district court thought that, even though the complaint alleged six wrist and neck injuries, it "provide[d] no evidence that the injuries [were] related other than the conclusory allegation that they [were]." Appellant's Appendix at A.3. The district court also found it especially significant that the application contained no information that the complaining employee had any medical expertise.[5] *Id.* We think this observation is particularly wide of the mark.

It seems a mere matter of common sense that repeated and excessive pushing with the wrist might lead to wrist injuries and possibly even to neck injuries. OSHA has, in fact, submitted extensive documentation about just such "cumulative trauma disorders." *See, e.g.*, the United States Dept. of Health's Cumulative Trauma Disorder Manual for the Upper Extremity, Appellant's Appendix at A.15–A.50. The drawing of a reasonable inference of causation here does not necessarily require more "expertise" than deciding that leaking sewer

gases are unhealthy, *Burkart Randall*, 625 F.2d at 1315 n. 1, or that objects that are stacked too high create a danger to the employees below, *Gilbert & Bennett*, 589 F.2d at 1339.

The fact that none of the cited precedents dealt with cumulative trauma disorders is irrelevant. The point of these precedents lies not in the injuries they discuss, but in their assessment of when the alleged facts supported a finding of reasonableness *qua* probable cause. Without some relevant expertise, an employee has no real way of knowing which leaking sewer gases pose health threats and which do not. Still, it is reasonable to assume, without any relevant expertise, that the gases pose enough possible danger to make further inspection warranted. Indeed, we held as much in *Burkart Randall*.

The same is true of this case. No medical expertise was needed to reasonably presume that work on Midwest's assembly lines probably posed a significant threat to the employees who worked there. Moreover, we think it only reasonable to assume that the complaining employee had spoken to doctors or had spoken to employees whose injuries had been diagnosed by doctors. The employee complaint refers specifically to "repetitive motion related wrist and neck injuries." This does not sound like the language of a medical layman to us. In short, we see no reason, nor was it reasonable, for the district court to require further pre-warrant investigation in this case.

### III. Conclusion

In sum, we think that the Secretary's warrant application sets forth a reasonable basis to believe that working conditions on certain of Midwest assembly lines are violating Section 5(a)(1) of the OSH Act. Or, to put the matter another way, we hold that the application provides enough specific evidence to support a reasonable suspicion that an OSHA violation is occurring. The decision of the district court is, therefore, REVERSED and the Secretary of La-

---

**5.** The district court did conceed, however, that under *Gilbert & Bennett*, medical expertise was probably not required. Appellant's Appendix at A.3.

bor's application for a warrant is hereby GRANTED.